CENTRAL AGUIRRE SUGAR CO., demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* R-63-245      *Resuelto:* 16 de noviembre de 1964

*Hartzell, Fernández & Novas,* abogados de la recurrente; *J. B. Fernández Badillo, Procurador General,* y *Manuel Tirado Viera, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

La recurrente Central Aguirre Sugar Co. introdujo en Puerto Rico e instaló en su molino azucarero un sistema para la conducción de su azúcar a granel desde su almacén hasta

la bodega de los barcos que transportaban el producto fuera de Puerto Rico. Consiste de tres pequeños conductores movidos por motores eléctricos y dos conductores principales movidos por motores Diesel. El recurrido Secretario de Hacienda de Puerto Rico le requirió el pago de arbitrios sobre todas las unidades del sistema, excepto sobre los motores Diesel, de acuerdo con lo provisto en la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico (Ley Núm. 2 de 20 de enero de 1956—13 L.P.R.A. sec. 4010(b)(8)).[1] El tribunal de instancia en efecto sostuvo la contención del recurrido de que "los artículos introducidos se componían de conductores y correas para los mismos instalados *como parte del sistema eléctrico de embarque de azúcar a granel que opera la recurrente*", al resolver que estos artículos constituyen "partes y accesorios" de los motores eléctricos pues "[D]entro del vasto alcance de la definición cualquier artículo que sea impulsado, o en cualquier forma auxiliado o esté subordinado a un artículo gravado recíprocamente para lograr su funcionamiento, está gravado en la misma forma que lo está el artículo principal (motor eléctrico)".

El referido sistema se describe a continuación: Dos conductores de 248 y 275 pies respectivamente, movidos por

---

[1] El Art. 10 de la referida ley, según ha sido enmendada, dispone:

"(a) .     .     .     .     .     .     .     .

"(b) Tabla de Impuestos—Los artículos sujetos al pago de impuestos son los que a continuación se expresan:

".     .     .     .     .     .     .     .

"(8) Aparatos Eléctricos
o de Gas Fluido

15% sobre el 'precio contributivo en Puerto Rico'."

El Art. 22 de la ley en cuestión (13 L.P.R.A. sec. 4022(a)), dispone que:

"*Artículos gravados.* Estará sujeto al impuesto sobre aparatos eléctricos o de gas fluido, al tipo prescrito en la sec. 4010 de este título, cualquier aparato eléctrico o de gas fluido incluyendo partes y accesorios para los mismos, excepto según se dispone en el apartado (b) siguiente."

dos motores eléctricos de 15 caballos de fuerza cada uno, llevan el azúcar desde el almacén hasta vertirla en un tercer conductor que tiene una extensión de 384 pies y que lleva el producto hasta una casa de romanas donde se pesa. Este tercer conductor es movido por un motor Diesel de 100 caballos de fuerza. De la casa de romanas parte el cuarto conductor de 1,122 pies de largo, movido por un motor Diesel de 170 caballos de fuerza que conduce el azúcar hasta una torre en el muelle de la recurrente. Desde la torre hay·otro conductor de 65 pies de largo que llega hasta la bodega del barco. Este conductor es movido por un motor eléctrico de 3 caballos de fuerza. Los cinco conductores del sistema se complementan entre sí aun cuando son capaces de funcionar independientemente. Pero en relación con el propósito para el cual fue instalado el sistema es preciso que los cinco funcionen simultáneamente. La recurrente pagó los impuestos de acuerdo con la referida ley sobre el equipo de conductores impulsado por motores eléctricos, pero protestó del pago de $20,218.11 sobre los conductores movidos por motores Diesel por entender que no están sujetos a tributación. *El recurrido aceptó que los motores Diesel no tributan* pero, por el contrario, insiste en que los conductores impulsados por tales motores están sujetos al pago de arbitrio porque constituyen "partes y accesorios" de artículos gravados en virtud de lo dispuesto en el Art. 4(7) de la referida ley (13 L.P.R.A. sec. 4004(7)).

En su recurso de revisión en contra de la sentencia del tribunal de instancia, la recurrente imputa la comisión de dos errores al resolver dicho tribunal que "En el caso de *Francis* v. *Tribunal de Contribuciones y Tesorero*, 74 DPR 19 (1952), estuvo ante la consideración del Tribunal *si esta misma instalación* estaba exenta" del pago de arbitrios y se resolvió que no; y que constituyó error resolver "que las partes y accesorios de la sección movida por motores Diesel . . . son partes y accesorios dentro del significado del Art. 4(7) de la Ley . . . por ser . . . artículos impulsados, auxi-

liados o subordinados a un artículo gravado recíprocamente (motores eléctricos) para lograr su funcionamiento."

Convenimos con el Procurador General que la doctrina de *Francis*, supra, no es de aplicación pues en dicho caso se trataba de la función industrial o comercial que la instalación en cuestión lleva a cabo a los fines de determinar si estaba exenta como maquinaria, aparato o equipo esencial para el funcionamiento de plantas industriales, es decir, maquinaria de la fase fabril, y en dicho caso resolvimos que el equipo en cuestión es parte de la etapa inicial de la fase comercial y, por lo tanto, no estaba exenta de tributación, de acuerdo con lo dispuesto en la Sec. 16-B de la Ley Núm. 195 de 7 de mayo de 1949 (en la actualidad esta exención está incluida en el Art. 46(b)) de la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico (13 L.P.R.A. sec. 4046(b)); y que la contribución impuesta que motiva esta causa contempla la constitución o naturaleza propia del equipo o maquinaria utilizada en el proceso de embarque de azúcar a granel. La cuestión envuelta en esta controversia es la que da motivo al segundo error señalado por la recurrente y, por lo tanto, debemos resolver si los dos conductores movidos por motores Diesel, dentro del sistema de conducción de azúcar consistente de cinco conductores que "se complementan entre sí aun cuando son capaces de funcionar independiente pero en relación con el propósito del sistema es preciso que los cinco funcionen simultáneamente", son partes y accesorios de los tres motores eléctricos que mueven los otros tres conductores más pequeños, dentro de la definición del término "partes y accesorios" del Art. 4(7) (13 L.P.R.A. sec. 4004(7)) de la citada ley que en su primera parte lee así:

"(7) 'Partes y Accesorios' son cualesquiera artículos de naturaleza sólida que de acuerdo con el 'uso normal predominante' se hayan hecho para unirse a, anexarse físicamente a, formar parte en la constitución de, o ser usados en relación subordinada

a, cualquiera de los aparatos o artículos gravados por este Sub-título. Por 'uso normal predominante' se entenderá el uso que se le dé a un artículo por el sesenta (60) por ciento o más de los consumidores o usuarios y según lo determine el Secretario. Los términos 'partes y accesorios' incluyen:

(a) Cualquier artículo que aun cuando pudiera tener utilidad independiente, se haya hecho, de acuerdo con el 'uso normal predominante' para formar parte en la constitución, funcionamiento u ornamentación de los artículos gravados;

(b) Cualquier artículo que aun cuando sea impulsado, o en otra forma auxiliado, por el aparato o artículo principal gravado, también se subordine a éste recíprocamente para lograr su funcionamiento."

Resulta claro que el equipo en cuestión no cae dentro de ninguna de las exclusiones relacionadas en dicha disposición. (²)

---

(²) Dispone el citado Art. 4(7) que los términos (partes y accesorios) excluyen:

"(a) Aquellos que den mero apoyo o soporte al artículo principal (excluyendo los trípodes para cámaras o proyectores), o que provean un asiento para el operador o ejecutante, a menos que sean acoplables al artículo principal;

"(b) Aquellos que, sin ser acoplables al principal, se usen exclusivamente para la limpieza, conservación, lubricación, ajuste o arreglo del artículo principal, sin incluir las cajas de herramientas que vienen con un vehículo o máquina ni los estuches o fundas para cámaras;

"(c) Aquellos que, por simple enlace, reciben tracción de vehículos de autoimpulsión hacia un sitio donde han de rendir una función principalmente agrícola, sanitaria o de índole parecida;

"(d) Aquellos que, sin ser acoplables al principal, se usen exclusivamente para eliminar o amortiguar ruidos o vibraciones en el artículo principal, sin incluir los silenciadores para los motores de combustión interna;

"(e) Respecto a ascensores: los carriles y bastidores que se empotran en la edificación, los cables de acero, y artículos usados para reparar el carro y el portón del ascensor;

"(f) Artículos tales como sustentáculos, atriles, y otros de igual naturaleza que se usen para acomodar el objeto que observa el operador de una máquina o instrumento, a menos que sean acoplables al artículo principal; y

"(g) Respecto a imprentas y rotativas: el papel del periódico, las matrices de cartón, los clisés, los componedores, los tipos de plomo, los lingotes, las interlíneas, los filetes, los corondeles y las bases, excluyéndose los equipos de fotograbados y sus accesorios y carbones, las matrices para

No se presentó prueba alguna sobre el uso que se le da por el 60% o más de los consumidores o usuarios a los dos conductores envueltos en esta cuestión.

■ El recurrido en su contestación no alegó que el uso predominante entre el 60% de los consumidores y usuarios de los dos conductores era en relación con motores eléctricos, sino más bien que los mismos "fueron instalados como parte del sistema eléctrico de embarque de azúcar a granel que opera la demandante." Es cierto que en un requerimiento de admisión de hechos se exigió la admisión de que los dos conductores son usados predominantemente por todas las centrales en un sistema de conducción de azúcar a granel mediante el uso de fuerza eléctrica, pero en su contestación a dicho requerimiento la recurrente no admitió ese hecho. De manera que la determinación administrativa del Secretario de Hacienda es la de que los conductores se instalaron "como parte del sistema eléctrico de embarque de azúcar". Dicha determinación goza de una presunción de corrección—se presume correcta toda determinación contributiva hecha por el Secretario de Hacienda(³)—que cede ante prueba creíble y razonable que sostenga las contenciones del contribuyente. Como demostraremos más adelante, esta presunción ha sido ampliamente rebatida. Sin embargo, a los efectos de determinar si los dos conductores en cuestión son o no son "partes y accesorios" de

---

linotipos y máquinas similares, las mantillas de todas clases, y los muletones.

Aun cuando un artículo con fines de embalaje, transportación o bajo otras circunstancias, aparezca separado del principal se entenderá acoplable a dicho artículo principal si así se determina del diseño del fabricante."

(³) Sobre la presunción de corrección, véanse: *West India Mach.* v. *Srio. de Hacienda,* 89 D.P.R. 115 (1963); *Reyes García* v. *Srio. de Hacienda,* 84 D.P.R. 596 (1962); *Ramón* v. *Secretario de Hacienda,* 84 D.P.R. 440 (1962); *Borinquen Home Corp.* v. *Srio. de Hacienda,* 84 D.P.R. 161 (1961); *Central Igualdad, Inc.* v. *Srio. de Hacienda,* 83 D.P.R. 45 (1961); *Vilanova* v. *Secretario Hacienda,* 83 D.P.R. 74 (1961); *Collazo* v. *Srio. de Hacienda,* 82 D.P.R. 650 (1961); *Carrión* v. *Tesorero de P.R.,* 79 D.P.R. 371 (1956); *Vilanova* v. *Srio. de Hacienda,* 78 D.P.R. 807 (1955); *Compañía Marítima, Etc.* v. *Descartes, Tes.,* 78 D.P.R. 589 (1955).

los tres pequeños motores eléctricos, podemos asumir que conductores de la naturaleza de los que tenemos ante nuestra consideración en este caso son "usados predominantemente" por todas las centrales en un sistema de conducción de azúcar a granel mediante el uso de fuerza eléctrica.

Como ni los dos motores Diesel ni el conjunto de piezas que constituyen los dos conductores en cuestión están sujetos a tributación separadamente, sólo estarían gravados dichos conductores con el arbitrio que reclama el recurrido en caso que constituyesen "partes y accesorios" de los tres pequeños motores eléctricos en el referido sistema de conducción de azúcar. Debemos determinar, por lo tanto, si tales conductores se han hecho para:

(1) unirse a los tres pequeños motores eléctricos del referido sistema de conducción de azúcar a granel,

(2) anexarse físicamente a tales motores eléctricos,

(3) formar parte en la constitución de tales motores eléctricos, o,

(4) ser usados en relación subordinada a tales motores. También debemos determinar si dichos dos conductores:

(5) forman parte de la constitución, funcionamiento u ornamentación de los tres motores eléctricos,

(6) son artículos que aun cuando son impulsados o, en otra forma auxiliados, por los tres motores eléctricos, también se subordinan a éstos recíprocamente para lograr su funcionamiento.

■ En esta causa no se trata de la interpretación de una exención contributiva que por ser una gracia legislativa debe interpretarse restrictivamente a menos que la intención legislativa dentro de los fines que persigue con la exención justifique otra forma de interpretación. Se trata, por el contrario, de determinar si determinada propiedad está o no sujeta a determinada contribución. Las reglas de interpretación en casos de esta naturaleza las expusimos en *Central Coloso* v.

*Descartes, Tes.*, 74 D.P.R. 481 (1953). A esos efectos dijimos entonces que:

(a) Una ley no debe ser interpretada tomando aisladamente cada uno de sus párrafos, secciones o incisos sino que debe serlo tomándola en conjunto.

■ (b) Cuando el propósito de imponer una contribución no es claro, la duda debe resolverse en favor de la no imposición de la misma.

Resulta obvio que los dos conductores en cuestión no se construyeron para unirse a los tres motores eléctricos del sistema de conducción de azúcar de la recurrente. Como están unidos a dos motores Diesel, en ausencia de prueba en contrario, es de presumir que se hicieron para unirse a dichos motores Diesel.

Tampoco están físicamente anexados a los tres motores eléctricos. Por el contrario, lo están a sus dos motores Diesel.

Los dos conductores en discusión no forman parte en la constitución de los tres motores eléctricos, en otras palabras, no son piezas, herrajes, mecanismos o componentes de dichos motores.

Nos queda por determinar el alcance del concepto de "subordinación" a que se refiere la definición de "partes y accesorios" en la cuarta y sexta enumeración contenida en dicha definición, según la expusimos previamente. Como el concepto en cuestión se usa en una definición de "partes y accesorios" necesariamente tiene un alcance limitado al funcionamiento en sí del artículo sujeto a tributación que en este caso son los tres motores eléctricos. Podría decirse que por ser partes de un sistema de conducción de azúcar, tanto los dos conductores en cuestión como los tres motores eléctricos son partes subordinadas de tal sistema pero ésto no los hace subordinados unos de otros en el sentido de constituir "partes y accesorios" los unos de los otros. La procedencia de esta conclusión se reafirma en un caso como éste si tomamos en consideración los siguientes datos que aparecen del récord:

(1) Las secciones del referido sistema movidas por motores Diesel costaron $222,774.23. Las secciones movidas por los tres motores eléctricos costaron $53,936.49. De ahí que la contribución impuesta sobre las secciones movidas por motores Diesel asciende a $20,218.11, mientras que la contribución pagada sobre las otras tres secciones no debe exceder de unos $5,000.00.

(2) Los conductores movidos por los tres motores eléctricos tienen una extensión total de 588 pies y los dos movidos por motores Diesel de 1,506 pies.

(3) Dos de los motores eléctricos son de 15 caballos de fuerza cada uno y otro es de 3 caballos de fuerza mientras que uno de los motores Diesel es de 100 caballos y el otro es de 170 caballos de fuerza.

■ Ante unos hechos como los que acabamos de relacionar no es posible concluir, aun interpretando el estatuto liberalmente a favor de la imposición de la contribución y no restrictivamente como debemos hacerlo, que los dos conductores en cuestión sean "en otra forma auxiliados" por los motores eléctricos pues, por el contrario, son impulsados y por lo tanto en toda forma "auxiliados" por sus motores Diesel. Tampoco puede concluirse que "se subordinen a éstos [los motores eléctricos] recíprocamente para lograr su funcionamiento" pues como hemos indicado anteriormente no pueden considerarse los dos conductores en cuestión como "subordinados" a los tres motores eléctricos, menos aún para "lograr su funcionamiento" pues dichos conductores no intervienen con, ni contribuyen o coadyuvan al funcionamiento de los motores eléctricos ya que ésto se logra por la aplicación de la fuerza eléctrica a un conjunto de piezas y componentes que constituyan tales motores, independiente y separadamente de unos conductores que son a su vez movidos y que en efecto están "anexados" y "subordinados" a dos motores Diesel.

Por las razones expuestas concluimos que los dos conductores objeto de esta acción no constituyen "partes y ac-

cesorios" de los tres motores eléctricos y, por lo tanto, no son artículos tributables bajo la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico. Cf. *South P.R. Sugar Co.* v. *Srio. de Hacienda,* 90 D.P.R. 233 (1964). *En tal virtud, se revocará la sentencia del tribunal de instancia y en su lugar se dictará otra declarando con lugar la demanda en este caso y se ordenará el reintegro a la recurrente del monto de la contribución objeto de esta causa.*

