EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen I. López Rosas<br><br>    Peticionaria<br><br>            v.<br><br>Comisión Estatal de Elecciones<br><br>    Recurrida | Certiorari<br><br>2004 TSPR 47<br><br>161 DPR ____ |

Número del Caso: CC-1999-315

Fecha: 30 de marzo de 2004

Tribunal de Circuito de Apelaciones:

                Circuito Regional I

Juez Ponente:

                Hon. Guillermo Arbona Lago

Abogado de la Parte Peticionaria:

                Lcdo. Luis Amauri Suárez Zayas

Abogado de la Parte Recurida:

                Lcdo. Ramón L. Walker Merino

Materia: Revisión Administrativa Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen I. López Rosas

    Peticionaria

       v.                    CC-1999-0315   Certiorari

Comisión Estatal de Elecciones

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 30 de marzo de 2004.

Nos corresponde resolver cuál es el foro con jurisdicción, si el Tribunal de Primera Instancia o el Tribunal de Apelaciones, para revisar una Resolución emitida por la Oficina de Apelaciones y Querellas de Personal de la Comisión Estatal de Elecciones, declarándose sin jurisdicción para atender en la reclamación laboral de una empleada de confianza de la referida entidad.

I

El 14 de junio de 1982, la señora Carmen I. López Rosas (en adelante, "señora López Rosas" o "peticionaria") fue nombrada para

ocupar, con carácter transitorio, la plaza de Oficinista I en el Proyecto de Inventario de Tarjetas de Identificación Electoral de la Comisión Estatal de Elecciones (en adelante, "CEE"). Subsiguientemente, la señora López Rosas ocupó otros puestos de igual naturaleza dentro de ese organismo, hasta que el 31 de marzo de 1984 fue designada al puesto de confianza de Oficial de Inscripción Permanente, el cual estaba adscrito a la Junta de Inscripción Permanente de San Juan. La peticionaria laboró en tal capacidad hasta el 1 de julio de 1991, fecha en que fue nombrada Oficial de Proyectos Electorales Especiales, puesto clasificado igualmente como de confianza.

La señora López Rosas se mantuvo laborando como Oficial de Proyectos Especiales hasta el 23 de febrero de 1998, día en que recibió una carta de la Directora de Recursos Humanos de la CEE informándole que, a solicitud del Comisionado Electoral del Partido Popular Democrático y por instrucciones del Presidente de la CEE, se prescindía de sus servicios, efectivo el 28 de febrero de 1998.

Inmediatamente, la señora López Rosas presentó un escrito de apelación ante la Oficina de Apelaciones y Querellas de Personal de la CEE. En éste, argumentó que antes de laborar como Oficial de Proyectos Especiales ocupaba un puesto de carrera, al cual debía reinstalársele. Por tal razón, la peticionaria adujo que

la CEE venía obligada a celebrar una vista, en la que ésta tuviera la oportunidad de pasar prueba al respecto.

El 13 de julio de 1998, la CEE solicitó la desestimación de la apelación presentada. Alegó, en esencia, que los puestos ocupados por la peticionaria durante sus años de servicio en la CEE fueron siempre de confianza, razón por la cual podía ser removida libremente de su puesto, sin la necesidad de formularle cargos ni celebrar vista. Añadió, además, que la Oficina de Apelaciones y Querellas no tenía jurisdicción para resolver el asunto toda vez que los reglamentos de personal de la referida entidad le conferían jurisdicción únicamente en las reclamaciones laborales que tuviesen los empleados de carrera.

Mediante Resolución de 16 de septiembre de 1998, el Oficial Examinador resolvió que conforme a lo establecido en la Sección 18.2 del Artículo 18 del Reglamento de Personal para los Empleados en el Servicio de Carrera de la CEE, la Oficina de Apelaciones y Querellas no tenía jurisdicción para atender la reclamación de la peticionaria por ser ésta empleada de confianza. En consecuencia, el Oficial Examinador ordenó el archivo de la apelación.

Ante la incertidumbre sobre cuál era el foro adecuado para revisar la resolución de la Oficina de Apelaciones y Querellas, el 6 de noviembre de 1998, la señora López Rosas presentó simultáneamente dos recursos

de revisión, uno ante el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), y el otro ante el entonces Tribunal de Circuito de Apelaciones (en adelante, "TCA"). En razón de ello, la CEE le solicitó al TCA que resolviera cuál era el foro con jurisdicción, si el TPI o el TCA, para atender el recurso presentado por la peticionaria.

Mediante Sentencia de 19 de marzo de 1999—archivada en autos el 23 de marzo de 1999—el foro apelativo intermedio concluyó que el TCA no era el foro apropiado en ley para atender el asunto planteado y que correspondía al TPI pasar juicio sobre el mismo, mediante juicio de novo, conforme a lo dispuesto en el Artículo 1.016 de la Ley Electoral, 16 L.P.R.A. §3016a.[1]

Sin embargo, dos días antes del TCA emitir su dictamen, el 17 de marzo de 1999, el TPI había dictaminado sentencia en el caso presentado ante su consideración sobre el asunto de marras.[2] El foro primario determinó, sin celebrar juicio de novo, que tenía jurisdicción para considerar el recurso, y lo resolvió en sus méritos al concluir que la peticionaria nunca ocupó un puesto de carrera en la CEE, y, por ende, no tenía derecho a que se le formularan cargos, se le celebrara una vista administrativa y se le reinstalará en

---

[1] *Véase* págs. 6-7, *infra*.

[2] Carmen I. López Rosas v. Comisión Estatal de Elecciones, Civil Núm. KAC-98-1214.

el puesto que solicitaba.  Dicha sentencia fue archivada en autos el 31 de marzo de 1999.

En desacuerdo con el curso decisorio tomado por el TCA, el 23 de abril de 1999, la señora López Rosas presentó ante este Tribunal una petición de *certiorari* formulando los siguientes señalamientos de error:[3]

a. Erró el Tribunal de Circuito de Apelaciones al concluir que el artículo 1.016 de la Ley Electoral es el mecanismo sustantivo y procesal para resolver la controversia laboral presentada por la peticionaria y al no concluir que le correspondía a éste resolver si erró o no la Junta de Apelaciones de la Comisión al declararse sin jurisdicción para entender en la apelación de la peticionaria impugnando el despido por el Presidente de la CEE.

b. Erró el Tribunal de Circuito de Apelaciones al no revisar en sus méritos y revocar las determinaciones administrativas impugnadas por la peticionaria en su recurso de revisión, tanto la decisión del Presidente de la Comisión de despedirla sumariamente sin previa formulación de cargos, sin causa justificada ni vista previa, como la determinación de la Oficina de Apelaciones de la Comisión al declararse sin jurisdicción para considerar la apelación de su despido sin darle la oportunidad a la peticionaria de demostrar en una vista administrativa que ella era una empleada regular de carrera, no obstante su clasificación como empleada de confianza y que había adquirido unos derechos cuando la Comisión estuvo sujeta a la Ley de Personal del Servicio Público, todo ello en violación al debido proceso de ley.

_____

[3] Acompañó a la referida petición una moción en auxilio de jurisdicción, mediante la cual solicitó la paralización de los procedimientos ante el TPI, en lo que resolvíamos si la sentencia del TCA era correcta.

Ante la clara incompatibilidad entre ambas sentencias, accedimos a revisar. Así, mediante Resolución de 29 de abril de 1999, expedimos el recurso y ordenamos la paralización de los procedimientos ante el TPI. Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

II

Primeramente, debemos dilucidar si el mecanismo que provee el Artículo 1.016 de la Ley Electoral, *supra*, es el adecuado para revisar la Resolución de un Oficial Examinador que se niega a asumir jurisdicción en la reclamación de una empleada de confianza de la CEE.

El TCA visualizó la "Resolución" emitida por el Oficial Examinador como una "resolución, determinación u orden" de la CEE, la cual tenía el efecto de activar el mecanismo estatuido en el Artículo 1.016 de la Ley Electoral, *supra,* para la revisión de las decisiones de la CEE.[4] Sin embargo, tras una detallada lectura del referido articulado vemos que éste nos sitúa ante un procedimiento de revisión creado e ideado para personas afectadas por determinaciones de la CEE que sean **de**

---

[4] El foro apelativo intermedio llegó a esta conclusión luego de analizar el Reglamento para Empleados de Confianza de la Comisión Estatal de Elecciones y encontrar que el mismo guardaba silencio en cuanto al trámite procesal que deberá seguir un empleado de confianza para cuestionar su despido. O sea, el TCA aplicó las disposiciones de la Ley Electoral, *supra*, para suplir la alegada laguna.

**naturaleza electoral**, donde la celeridad de los procedimientos es vital para salvaguardar los derechos de los electores.

El referido precepto legal dispone que:

Cualquier parte afectada por una resolución, determinación y orden de la Comisión Estatal podrá dentro de los diez (10) días siguientes a la notificación de la misma recurrir ante el Tribunal de Primera Instancia mediante la radicación de un escrito de revisión. La parte promovente tendrá la responsabilidad de notificar copia del escrito de revisión a la Comisión Estatal y a cualquier parte afectada.

El Tribunal de Instancia celebrará una vista en su fondo, recibirá evidencia y formulará [las] determinaciones de hecho y conclusiones de derecho que correspondan. El Tribunal deberá resolver dicha revisión dentro de un término no mayor de veinte (20) días, contados a partir de la fecha de sometida la misma.

Dentro de los treinta (30) días anteriores a un evento electoral el término para radicar el escrito de revisión será de veinticuatro (24) horas y aquél para resolverla no mayor de cinco (5) días, luego de sometido el caso.

Todo asunto o controversia que surja dentro de los cinco (5) días previos a la celebración de una elección deberá resolverse no más tarde el día siguiente a su radicación.

Los casos de impugnación de una elección, se verán ante un Juez Superior, en el distrito judicial correspondiente. Disponiéndose que para las elecciones generales el Juez Presidente del Tribunal Supremo de Puerto Rico designará al Juez Superior, ante el cual se verán dichos casos, con tres (3) meses de antelación a la fecha de las elecciones de que se trate, debiendo dar una notificación escrita de dicha designación con especificación del

distrito judicial a que correspondan, a la Comisión Estatal de Elecciones.

Los términos dispuestos en esta sección serán mandatorios.

De lo anterior, queda evidenciado que el procedimiento instaurado en el citado precepto legal persigue un propósito dual. De una parte, busca agilizar los reclamos de los electores con el fin de que no queden vulnerados sus derechos. De la otra, persigue mantener una estabilidad y certidumbre en el ordenamiento jurídico estableciendo unos términos de corta duración.[5] Ello por la importancia que tienen los asuntos de naturaleza electoral en nuestro sistema de gobierno.

Por tal razón, **el procedimiento dispuesto en el Artículo 1.016 de la Ley Electoral**, *supra*, **es inadecuado para revisar la determinación del despido de una empleada de confianza de la CEE.** Como mencionáramos, los procedimientos allí instituidos están diseñados para

---

[5] Cuando en *Frente Unido Independentista v. C.E.E.*, 126 D.P.R. 309, 318 (1990), determinamos que la Regla 68.3 de las de Procedimiento Civil no era aplicable al trámite instituido en el Artículo 1.016 de la Ley Electoral, *supra*, concluimos que el propósito de la referida ley en el establecimiento de términos cortos para recurrir al Tribunal de una determinación de la CEE, es lograr la tramitación pronta de los asuntos de índole electoral, ya que dicho artículo pretende "salvaguardar los derechos de cualquier elector o agrupación de electores y vindicar los derechos que entienda que el organismo electoral le ha violado."(citas omitidas) Allí añadimos que la presentación de los reclamos de los electores, requiere diligencia para evitar dilaciones o demoras innecesarias que obstaculicen el proceso electoral y creen incertidumbre de derecho. A raíz de la naturaleza del trámite, establecimos que el término de diez (10) días para la revisión judicial es de carácter jurisdiccional.

atender controversias de índole electoral, no asuntos relacionados a la reclamación laboral de un empleado de confianza.

En apoyo a esta conclusión, si analizamos otros artículos de la Ley Electoral veremos que el procedimiento de revisión establecido en el referido articulado es totalmente incompatible con el caso de autos. Por ejemplo, el Artículo 1.015 de la ley, 16 L.P.R.A. § 3015, establece respecto a la jurisdicción de la CEE, lo siguiente:

> **La Comisión tendrá jurisdicción original para** motu proprio o a instancia de parte interesada entender, conocer y **resolver cualquier asunto o controversia de naturaleza electoral**.
>
> (a) Siempre que se radique una queja o querella en la Secretaría de la Comisión, ésta tendrá facultad y discreción para investigar la misma y celebrar una audiencia. En todo caso de audiencia, se deberá, dentro de los términos que por reglamento se prescriban, notificar a las partes de la celebración de la misma.
>
> (b) La Comisión deberá resolver aquellos asuntos y controversias ante su consideración dentro de un término no mayor de los treinta (30) días siguientes a su radicación ante el Secretario. Dentro de los treinta (30) días anteriores a un evento electoral este término será de cinco (5) días.
>
> (c) Todo asunto o controversia que surja dentro de los cinco (5) días previos a la celebración de una elección deberá resolverse al día siguiente de su radicación en los cuatro (4) días anteriores a la víspera de la elección. Aquéllos sometidos en cualquier momento en la

> víspera de una elección deberán
> resolverse no más tarde de las seis
> (6) horas siguientes a su presentación
> y dentro de la hora siguiente a su
> radicación, de presentarse el mismo
> día de la elección.
>
> Nada de lo antes dispuesto tendrá el
> efecto de paralizar o dilatar cualquier
> proceso electoral debidamente señalado para
> celebrarse en una hora y día determinado.
> (Énfasis nuestro.)[6]

Por tanto, ¿qué otra interpretación se le puede dar al Artículo 1.016, *supra*, que no sea que determina el procedimiento de revisión de las determinaciones de la CEE sobre los asuntos sujetos a la jurisdicción original que le fue concedida por el Artículo 1.015, *supra*? La respuesta a esta interrogante es clara y sencilla: dicha ley será de aplicación para resolver los asuntos de naturaleza electoral que la CEE tenga ante sí y **no** para revisar las determinaciones de la CEE en el contexto administrativo interno de un despido.

No puede perderse de perspectiva, que es norma de interpretación jurídica, que las disposiciones de una ley no deben interpretarse aisladamente, sino en conjunto las unas con las otras, a fin de descubrir la verdadera intención del legislador y no caer en el absurdo de desnaturalizar los preceptos legales. *Ind. Cortinera,*

---

[6] La sección que sucede a esta disposición está relacionada con el carácter público de los documentos de la CEE; la sección 3026a regula la constitución de las Juntas de Unidad Electoral; la sección 3033 regula los sistemas de votación que se utilizarán en los procesos electorales; la sección 3031 regula como se aprobarán los acuerdos de las Comisiones Locales de Elecciones.

*Inc., v. P.R. Telephone Co.*, 132 D.P.R. 654 (1993);

*Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64

(1983); *Central Aguirre v. Scrio. Hacienda*, 91 D.P.R. 340

(1964); *Figueroa v. Díaz*, 75 D.P.R. 163 (1953).

Claramente existe incompatibilidad entre el trámite

instaurado en el Artículo 1.016 de la Ley Electoral,

*supra*, y el reclamo de la señora López Rosas.  No podemos

avalar una interpretación de un estatuto que no concuerde

con la naturaleza del mismo.  Por tanto, concluimos que

el procedimiento del Artículo 1.016, *supra*, no constituye

el trámite apropiado para que un empleado de confianza

despedido de la CEE pueda revisar la determinación que le

fue adversa.

Resuelto esto, procedemos entonces a analizar ante

cuál foro judicial un empleado de confianza de la CEE

podrá solicitar la revisión de una determinación de la

Oficina de Apelaciones y Querellas de la referida

entidad, en la que se declaró sin jurisdicción para

atender su reclamo.[7] Veamos.

---

[7] No entraremos a considerar los méritos del planteamiento de la señora López Rosas sobre la procedencia de su despido, pues no fue un asunto cuestionado ante el TCA.

Al momento de su despido, la señora López Rosas estaba clasificada como empleada de confianza de la CEE. Por tanto, acudiremos a las disposiciones del Reglamento para empleados de esta categoría al resolver ante cuál foro la peticionaria puede revisar una determinación de la CEE que la afecta directamente. Recalcamos, no obstante, que con ello no estamos adjudicando si en efecto la peticionaria era empleada de confianza o de carrera.

III

La Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. §§ *1301 et. seq.* (en adelante, "Ley de Servicio Público"), instauró el principio del mérito como principio rector en el empleo público. *Autoridad de los Puertos v. Municipio de San Juan*, 123 D.P.R. 496 (1989); *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982). Asimismo, la referida ley estableció las dos categorías de empleados cubiertas por el sistema: empleados de carrera y empleados de confianza.

La Ley de Servicio Público cobijó a los empleados de la CEE hasta el 8 de agosto de 1990, fecha en la cual se aprobó la Ley Núm. 32, 3 L.P.R.A. § 1338, que la excluyó específicamente. A raíz de esta exclusión, y en cumplimiento con las disposiciones de la Ley de Servicio Público relativas a extender el principio de mérito como rector de las normas de personal,[8] la CEE adoptó un Reglamento de Personal para Empleados en el Servicio de Confianza y otro Reglamento de Personal para Empleados en el Servicio de Carrera.

En la sección 9.3 del Reglamento de Personal para los Empleados en el Servicio de Confianza se estableció que el Presidente de la CEE tiene la facultad para remover libremente a esta categoría de empleados, sin la

---

[8] *Véase* Ley de Personal de Servicio Público, 3 L.P.R.A. sec. 1338 (3) y (4); Artículos 1 y 2 de la Ley Núm. 32 de 8 de agosto de 1990. *Véase además* <u>McCrillis v. Aut. Navieras de P.R.</u>, 123 D.P.R. 113 (1989).

necesidad de formularle cargos, ni indicarle los fundamentos para ello. Sin embargo, este Reglamento guarda silencio con relación al trámite procesal que deberá seguirse cuando un empleado de confianza plantee objeciones a su despido.[9]

Para suplir este silencio, en lugar de acudir a la Ley Electoral, podemos acudir a un reglamento vigente de la CEE-aprobado con anterioridad a los reglamentos de Personal de la CEE-que se titula "Normas para Revisión de las Acciones de Personal", el cual fue aprobado el 26 de noviembre de 1990. El Artículo IV de este Reglamento establece las facultades que tendrá el Oficial Examinador Independiente, disponiendo que:

---

[9] En reiteradas ocasiones hemos resuelto que los empleados de confianza, de ordinario, no poseen un interés propietario sobre el puesto que en esa capacidad ocupan. *Rodríguez Cruz v. Padilla*, 125 D.P.R. 486 (1990). Por tal razón, la autoridad nominadora puede despedirlos, sin previa notificación, formulación de cargos, y celebración de vista. *Matías Martí v. Municipio de Lares*, res. el 16 de marzo de 2000, 150 D.P.R. ___, 2000 T.S.P.R. 43, 2000 J.T.S. 57; *Consejo de Educación Superior v. Roselló González*, 137 D.P.R. 83 (1994). **No obstante, ello de ninguna manera significa que un empleado de confianza no pueda cuestionar su despido, toda vez que existen situaciones en que el mismo pueda impugnarse meritoriamente**. Por ejemplo, ello puede ocurrir cuando en el despido del empleado de confianza ha mediado discrimen político. *Ramos Villanueva v. Secretario de Comercio*, 112 D.P.R. 514 (1982). También puede ocurrir si ha mediado legislación dirigida a convertir el cargo de confianza en uno transitorio o de carrera, en donde podrían hacerse alegaciones relacionadas con el término del nombramiento o el derecho a reinstalación que pueda gozar el empleado. O bien podrían existir reclamaciones sobre el procedimiento seguido para el despido. En estas y otras situaciones, un empleado de confianza puede acudir al foro judicial solicitando la revisión de la determinación de la autoridad nominadora que le afecte directamente.

1. El Oficial Examinador Independiente tendrá facultad para investigar y revisar las determinaciones tomadas por la autoridad nominadora en aquellos casos de empleados, funcionarios o personas particulares afectadas por dichas determinaciones. Podrá confirmar, revocar o modificar las determinaciones de la autoridad nominadora y a tales efectos:

a. Tendrá jurisdicción para intervenir en las apelaciones sobre destituciones, suspensiones, separaciones, cesantías y reasignaciones de puestos del Servicio de Carrera. Tendrá además, jurisdicción en los casos de separación en período probatorio, siempre que éstos aleguen discrimen.

b. También, **tendrá jurisdicción para investigar querellas que radiquen funcionarios o empleados que se consideren afectados por alguna determinación de la autoridad nominadora que no sean las cubiertas por el inciso anterior de este Artículo**. (Énfasis suplido.)
...

El Reglamento de Personal de los Empleados en el Servicio de Carrera contiene una disposición idéntica a la precedente. *Véase* Sección 18.2, Reglamento de Personal para los Empleados en el Servicio de Carrera de la CEE. Como puede observarse, ambos reglamentos facultan al Oficial Examinador para investigar las querellas presentadas por funcionarios o empleados de la CEE que **no** estén contemplados en sus incisos (a). Es decir, facultan a dicho funcionario a revisar las determinaciones tomadas por la CEE que afecten a, entre otras personas, empleados de confianza. Ciertamente, estos estatutos complementan el silencio o vacío

existente en el Reglamento de los Empleados en el Servicio de Confianza.

A su vez, el Artículo XII de las "Normas para la Revisión de las Acciones de Personal", y la Sección 18.3 disponen, de idéntica manera, ante qué foro se podrá presentar el recurso que pretenda revisar las determinaciones del Oficial Examinador Independiente. El referido articulado dispone como sigue:

> 1. Las resoluciones del Oficial Examinador Independiente deberán contener determinaciones de hechos y las conclusiones de derecho en que estén basadas.
>
> 2. **Las resoluciones serán finales, excepto en los casos en los cuales cualesquiera de las partes, solicite su revisión judicial ante el Tribunal Superior, Sala de San Juan**. (Énfasis suplido.)

Los tres reglamentos mencionados se aprobaron **antes de la entrada en vigor de la Ley de la Judicatura de Puerto Rico de 1994**, 4 L.P.R.A. §§22a *et seq*. [derogada por la Ley Núm. 201 de 22 de agosto de 2003].[10] En aquél entonces, el Tribunal Superior era el foro con competencia para revisar las determinaciones de las distintas agencias e instrumentalidades del gobierno. Sin embargo, la situación cambió al adoptarse la Ley de la Judicatura de 1994, *supra*; por tanto, acudiendo a las disposiciones de esta ley dilucidaremos a cuál foro le corresponde adjudicar los reclamos de la peticionaria.

---

[10] *Véase* nota 12, *infra*.

Con la adopción de la Ley de la Judicatura de 1994, se le confirió al TPI la facultad para entender, **<u>como parte de su jurisdicción original</u>**, en "[t]odo asunto que con anterioridad a la vigencia de esta ley era atendido por el **Tribunal Superior**, el Tribunal de Distrito y el Tribunal Municipal". No obstante, la referida ley **<u>no</u>** le concedió al TPI la facultad, **<u>como parte de su jurisdicción apelativa</u>**, **para atender en recursos de revisión de las decisiones de las agencias o entidades administrativas**. Desde la entrada en vigor de esta ley, la revisión de las actuaciones administrativas fueron expresamente delegadas al TCA mediante el Artículo 4.002(g) de la Ley de la Judicatura de 1994, 4 L.P.R.A. sec. 22k(g). Es decir, el TCA (hoy día, Tribunal de Apelaciones) es el foro con autoridad para revisar las decisiones, resoluciones y providencias dictadas por organismos, funcionarios, y agencias administrativas que antes de la vigencia de la Ley de la Judicatura de 1994 debían ser revisadas por el Tribunal Superior. El Artículo 4.002(g) de la referida ley disponía que:

> El Tribunal de Circuito de Apelaciones conocerá de los siguientes asuntos:
>
> (a) ...
>
> (b) ...
>
> (c) ...
>
> (d) ...
>
> (e) ...
>
> (f) ...

> (g) **Mediante auto de revisión, a ser expedido discrecionalmente, de las decisiones, reglamentos, órdenes y resoluciones de cualquier agencia administrativa, de acuerdo con los términos y condiciones establecidos por las secs. 2101 et seq. del Título 3, conocidas como la "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico".**

> ...

Aunque esta disposición legal contempla la revisión de las decisiones de las agencias administrativas de acuerdo con los términos y condiciones establecidos por la Ley de Procedimiento Administrativo Uniforme, 4 L.P.R.A. §§ 2102 *et seq.*., el espíritu de dicha disposición es el establecer, como regla general, que el TCA revise las decisiones administrativas de las agencias o entidades gubernamentales, **incluyendo aquéllas que están excluidas de la aplicación de la L.P.A.U.** *Véase* Informe Final de 24 de junio de 1994 sobre el Plan de Reorganización Núm. 1 de 1994, 12ma Asamblea Legislativa, 3ra Sesión Ordinaria, a las págs. 29-30, 68-75; véase además, *Rivera Colón v. Dir. Adm. Trib.,* 144 D.P.R. 808 (1998). No obstante, **se exceptúan de esta norma las determinaciones de aquellas agencias u organismos administrativos que por disposición expresa de ley se deben revisar ante otro foro.** Como adelantáramos previamente, este es precisamente el caso de la CEE, cuyas decisiones de **índole electoral** deben revisarse ante el TPI, mediante juicio de novo. *Véase* Artículo 1.016 Ley Electoral, *supra*. Sin embargo, para efectos de

revisar una resolución de la CEE, en el contexto administrativo interno de un despido, corresponde al TCA la facultad para revisar la misma.

En *Rivera Colón v. Dir. Adm. Trib., supra*, nos enfrentamos a una situación en la que <u>no había un recurso habilitado en ley</u> para revisar judicialmente las determinaciones de la Junta de Personal de la Rama Judicial, ya que ni la Ley Orgánica ni el Reglamento de la Junta de Personal de esa Rama disponían de un procedimiento para ello. En aquella ocasión, entendimos procedente otorgarle jurisdicción al TCA mediante recurso de certiorari.[11] A ese resultado llegamos luego de evaluar la naturaleza cuasijudicial de las decisiones emitidas por ese organismo, y sus semejanzas con las agencias administrativas regidas por la Ley de

---

[11] Los hechos del citado caso se dieron en el contexto de una empleada de confianza de la Rama Judicial que fue cesanteada del puesto que ocupaba. Ésta apeló la determinación ante la Junta de Personal de la Rama Judicial reclamando que había adquirido derechos propietarios sobre el referido puesto. Luego de evaluar las posiciones de las partes, la Junta confirmó la decisión de la autoridad nominadora, respecto a la cesantía de la empleada. No obstante, la Junta dejó pendiente la adjudicación de una alegación de discrimen que ésta había realizado. En vista de tal situación, el Director Administrativo de los Tribunales solicitó ante la Junta la reconsideración del dictamen de dejar pendiente la reclamación de discrimen de dicha empleada. Dicho pedido fue denegado por la Junta. A raíz de ello, el Director Administrativo solicitó la revisión judicial. El caso fue asignado, entonces, a la Unidad Especial de Jueces de Apelaciones del entonces Tribunal Superior de Puerto Rico, **quienes mediante sentencia resolvieron que ni la Ley de Personal para la Rama Judicial, ni la Ley Núm. 11 de 24 de julio de 1952, 4 L.P.R.A. sec. 521 *et seq.*, ni el Reglamento de Personal para Empleados de la Rama Judicial disponían para la revisión judicial de la resolución recurrida.**

Procedimiento Administrativo Uniforme, 4 L.P.R.A. sec. 2102 *et seq*..Id., a la págs. 822-23.

En cambio, en el caso de autos, la laguna procesal existente queda suplida por el Reglamento de Personal para los Empleados de Confianza de la CEE, y por las "Normas para Revisión de las Acciones de Personal". Éstos, leídos conjuntamente, facultan al Tribunal de Apelaciones a revisar las determinaciones finales del Oficial Examinador de la CEE. En otras palabras, a diferencia del caso de *Rivera Colón*, supra, en donde no existían disposiciones legales que contemplaran la revisión judicial de las decisiones de la Junta de Personal de la Rama Judicial, en la situación que nos ocupa, los reglamentos de personal leídos conjuntamente <u>sí</u> proveen a las personas afectadas de un recurso para revisar las decisiones de personal que tome la CEE. Cada empleado afectado por una determinación puede solicitar su revisión ante el Tribunal Superior. Como dichos reglamentos fueron adoptados previo a la entrada en vigor de la Ley de la Judicatura de 1994, la cual abolió el antiguo Tribunal Superior, la revisión de las determinaciones que tome la CEE, en materia de personal, serán revisadas por el Tribunal de Apelaciones, foro con jurisdicción apelativa sobre las mismas.

**En razón de ello, no podemos sostener una interpretación que ocasione una derogación tácita de un estatuto cuando existe una interpretación conciliable**

**entre los estatutos en juego**. *Pueblo v. Cortés Rivera*, 142 D.P.R. 305, 316 (1997). Al dilucidar este tipo de controversias debemos interpretar las leyes y reglamentos que entran en juego de forma integral, armonizándolas y sopesando sus disposiciones para lograr el resultado más lógico y razonable posible. *Íd*. a la pág. 317; Véase además, *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735 (1992).

Teniendo este trasfondo jurídico como marco de referencia, procedemos a resolver el asunto planteado ante nuestra consideración.

### III

Luego de examinar la situación que se nos presenta en el recurso de autos, vemos que el foro apelativo intermedio resolvió equivocadamente que el TCA no estaba facultado en ley para atender el asunto planteado y que correspondía al TPI pasar juicio sobre el mismo. Para arribar a tal resultado, concluyó que el remedio al cual tenía acceso la señora López Rosas para revisar la determinación de la CEE estaba dispuesto en el Artículo 1.016 de la la Ley Electoral, *supra,* el cual establece que el TPI podrá revisar toda determinación, resolución u orden de la CEE mediante la celebración de un juicio de novo. Luego de examinar las disposiciones legales y jurisprudencia aplicable al caso de autos, concluimos que erró el TCA en su determinación. **El remedio que provee el referido articulado es inapropiado para revisar la**

**determinación de despido de un empleado de confianza de la CEE, toda vez que su enfoque es exclusivamente electoral.**

Como acotáramos en la sección precedente, el vacío legal existente puede suplirse acudiendo a los reglamentos de la CEE y a las disposiciones de la Ley de la Judicatura de 1994,[12] los cuáles leídos e interpretados en su conjunto, permiten a la señora López Rosas solicitar la revisión de la determinación de la Oficina de Apelaciones y Querellas de la CEE ante el TCA. En consecuencia, concluimos que un empleado de confianza de

---

[12] El resultado al que llegamos hoy día en nada varía con la adopción de la nueva "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003", Ley Núm. 201 de 22 de agosto de 2003. El Artículo 4.006 de esta ley dispone que:

El Tribunal de Apelaciones conocerá de los siguientes asuntos:

(a)...
(b)...

(c) **Mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas.** En estos casos, la mera presentación del recurso no paralizará el trámite en el organismo o agencia administrativa ni será obligatoria la comparecencia del Estado Libre Asociado ante el foro apelativo a menos que así lo determine el tribunal. El Procedimiento a seguir será de acuerdo con lo establecido por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". La revisión de las decisiones finales de los organismos y agencias administrativas se llevará a cabo según se dispone en el Artículo 9.004 de esta Ley.

la CEE tendrá a su alcance el mecanismo de revisión judicial provisto por el Reglamento para Empleados de Confianza de la CEE y las "Normas para Revisión de las Acciones de Personal", cuando éste resulte afectado por una determinación de dicha entidad, en el contexto administrativo interno de un despido.

Por los fundamentos expuestos en esta Opinión resolvemos que es el Tribunal de Apelaciones, y no el Tribunal de Primera Instancia, el foro con jurisdicción para revisar las "resoluciones" emitidas por la Junta de Apelaciones y Querellas de la Comisión Estatal de Elecciones. Se revoca la Sentencia del entonces Tribunal de Circuito de Apelaciones de 19 de marzo de 2003, y, en aras de la economía procesal, se devuelve el caso a la Junta de Apelaciones y Querellas para que evalúe los méritos de la reclamación de la señora López Rosas.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen I. López Rosas

    Peticionaria

       v.                           CC-1999-0315   Certiorari

Comisión Estatal de Elecciones

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 30 de marzo de 2004.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que es el Tribunal de Apelaciones, y no el Tribunal de Primera Instancia, el foro con jurisdicción para revisar las "resoluciones" emitidas por la Junta de Apelaciones y Querellas de la Comisión Estatal de Elecciones. Se revoca la Sentencia del entonces Tribunal de Circuito de Apelaciones de 19 de marzo de 2003, y, en aras de la economía procesal, se devuelve el caso a la Junta de Apelaciones y Querellas para que evalúe los méritos de la reclamación de la señora López Rosas.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton disiente sin opinión escrita. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo