EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José G. Camacho Torres<br><br>        Peticionario<br><br>              v.<br><br>Administración para el<br>Adiestramiento de Futuros<br>Empresarios y Trabajadores<br><br>        Recurrido | Apelación<br><br>2006 TSPR 88<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2003-868

Fecha: 22 de mayo de 2006

Tribunal de Apelaciones:

              Circuito Regional de San Juan Panel III

Juez Ponente:

              Hon. Jorge Segarra Olivero

Abogado de la Parte Peticionaria:

              Lcdo. Héctor Hernández Soto

Abogado de la Parte Recurrida:

              Lcdo. Guillermo Mojica Maldonado

Materia: Revisión procedente de la Junta de Apelaciones del
        Sistema de Administración de Personal (JASAP)

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José G. Camacho Torres

    Peticionario

       v.

Administración para el              CC-2003-868
Adiestramiento de Futuros
Empresarios y Trabajadores

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 22 de mayo 2006

En esta ocasión tenemos la oportunidad de aclarar el alcance de nuestra decisión en *Piñero v. A.A.A.*, 146 D.P.R. 890 (1999), pues se nos plantea, que en la misma hicimos extensivo un derecho absoluto de reinstalación a todos los empleados de carrera luego de concluir funciones en un puesto de confianza, basado ello en la aceptación del principio de movilidad de empleados de carrera entre agencias excluidas de la Ley de Personal del Servicio Público.

Tenemos por lo tanto que dilucidar si un empleado de una corporación pública que renuncia a su puesto de carrera y, sin interrupción alguna, pasa a ocupar

un puesto de confianza en una agencia del gobierno central, tiene derecho a ser reinstalado por esta última, a su separación del puesto de confianza, en un puesto de carrera igual o similar al que él había ocupado en la corporación.

I

El señor José Camacho Torres ("Camacho Torres" o "el peticionario") fue nombrado el 20 de mayo de 1992 como subgerente regional en la Corporación de Crédito y Desarrollo Comercial y Agrícola ("Corporación"). Luego de aprobar el período probatorio, el peticionario se convirtió en empleado regular en el servicio de carrera de la Corporación.

El 5 de febrero de 1993, el peticionario renunció a su puesto de carrera para aceptar un nombramiento de confianza en el Cuerpo de Voluntarios al Servicio de Puerto Rico (precursor de la hoy Administración para el Adiestramiento de Futuros Empresarios y Trabajadores "AAFET"). En el Cuerpo de Voluntarios, Camacho Torres fue designado inicialmente al puesto de Director de la referida agencia y meses después fue nombrado al puesto de director de recursos humanos. Ambos puestos estaban integrados al servicio de confianza.

Tras laborar tres años como empleado de confianza, el 3 de septiembre de 1996, la AAFET le nombró a un puesto de carrera, específicamente, subdirector de recursos humanos. **El peticionario fue designado a la posición mediante el mecanismo de reinstalación sin que mediara ningún procedimiento ulterior.**

Al año siguiente, el 1 de octubre de 1997, el peticionario fue nombrado director de sistema de información, puesto integrado al servicio de confianza, y dos años más tarde fue reinstalado nuevamente al puesto de subdirector de recursos humanos con estatus regular en el servicio de carrera.

En el 2001, la agencia realizó una investigación del expediente de personal del señor Camacho Torres y, como resultado de la misma, se le eliminó un diferencial salarial de $250.00 mensual que le había sido concedido. Según la agencia, no existía ninguna justificación para la concesión del mismo.

Meses después, el 18 de julio de 2001, el Administrador de la AAFET, le notificó por escrito la intención de la agencia de separarlo del puesto de subdirector de recursos humanos por razón de que dicho nombramiento había sido nulo. Según el Administrador, la reinstalación del peticionario a un puesto de carrera en la AAFET fue ilegal, pues éste, antes de ejercer el puesto de confianza en dicha agencia, no había ocupado en AAFET un puesto integrado en el servicio de carrera, por lo que no adquirió un derecho de reinstalación. Ante dicha notificación, el peticionario solicitó la celebración de una vista administrativa, la que se llevó a cabo el 9 de octubre de 2001.

Luego de celebrada la misma, el oficial examinador emitió su informe recomendando a la agencia la destitución del peticionario, bajo el fundamento de que una vez el señor Camacho Torres renunció a su posición de carrera en la

Corporación para aceptar una posición de confianza en la AAFET, perdió los derechos y beneficios que le cobijaban como empleado de carrera de la Corporación. Por lo que, a tenor con el Reglamento de Personal de AAFET, cuando el señor Camacho Torres culminó su puesto de confianza en AAFET no podía ser reinstalado en un puesto de carrera.[1]

La AAFET adoptó el referido informe en su totalidad, y decretó la nulidad del nombramiento del peticionario en el puesto de carrera y ordenó la separación de éste del puesto de subdirector de recursos humanos, efectivo el 31 de octubre de 2001.

Inconforme, el señor Camacho Torres apeló dicha determinación ante la antigua Junta de Apelaciones del Sistema de Administración de Personal ("JASAP"). En síntesis, alegó que fue destituido ilegal y discriminatoriamente de su puesto de carrera. Señaló, que antes de haber ocupado el puesto de confianza en la AAFET ocupó un puesto de carrera en la Corporación y por ello adquirió el derecho absoluto a ser reinstalado en un puesto de carrera en la AAFET de igual o similar clasificación al

---

[1] En su informe, el oficial examinador concluyó, además, que no procedía la solicitud del señor Camacho Torres de presentar prueba sobre discrimen político por ser irrelevante a los hechos en controversia. Sostuvo que de los documentos que consideró el Administrador de AAFET para tomar la decisión de destituirlo por nulidad de nombramiento, no existía ningún indicio de que se hubiese tomado en consideración la afiliación política de éste. Por el contrario, expresó el oficial examinador que la alegación de discrimen contrastaba con el hecho de que el señor Camacho Torres fue nombrado en sus posiciones de confianza y de carrera en el año 1991 y 1992 bajo la administración del Partido Popular. Hecho que fue estipulado por las partes.

puesto que ocupó en la Corporación. Asimismo, adujo que la determinación de la autoridad nominadora de separarlo del puesto que ocupaba obedeció, además de a una interpretación errónea del derecho aplicable, a razones de discrimen político. Adujo que la autoridad nominadora llevó a cabo una investigación de su expediente personal de forma selectiva debido a que tenía conocimiento de que él estaba afiliado al Partido Nuevo Progresista. Por ello, solicitó de la JASAP que dejara sin efecto la resolución emitida por la autoridad nominadora y, en consecuencia, ordenara su reinstalación en el puesto de subdirector de recursos humanos de AAFET con los salarios y sueldos dejados de percibir.

En su esencia, el peticionario esgrimió dos argumentos sustantivos ante JASAP. Por un lado, su reclamación de tener un derecho a reinstalación a un puesto de carrera que no le fue honrado por AAFET, constituyó un reclamo de violación al debido proceso de ley en su acepción procesal. De otra parte, el reclamo de discrimen político constituye una alegación de violación al derecho a la libre expresión.

La AAFET, por su parte, negó la totalidad de las alegaciones de la apelación y planteó las siguientes defensas afirmativas: que la apelación dejó de exponer hechos que justifiquen la concesión de un remedio, que el recurrido nunca adquirió estatus de empleado de carrera en la AAFET, que la sección 4.4 de la Ley de Personal del Servicio Público prohíbe el traslado de un empleado de la Corporación a la AAFET, que el recurrido llegó a trabajar a la AAFET mediante renuncia y nuevo nombramiento. Además se sostuvo que una

acción nula no genera derechos, que al recurrido no se le violó ningún derecho protegido por la Constitución, ley o reglamento alguno, y que la autoridad nominadora no discriminó en forma alguna contra el recurrido. Solicitó, pues, a JASAP que declarara sin lugar la apelación.

Tras varios procedimientos de rigor que incluyó una vista administrativa, JASAP decretó con lugar la apelación presentada por el peticionario y ordenó la reinstalación de éste en el puesto de subdirector de recursos humanos según solicitado. JASAP sostuvo que la anulación del nombramiento no procedía conforme a derecho y sólo respondió a una actuación de discrimen político realizada por la AAFET en contra del peticionario.

En específico, JASAP determinó en cuanto a la nulidad del nombramiento que, conforme *Piñero v. A.A.A.*, 146 D.P.R. 890 (1998), un empleado tenía un derecho absoluto a ser reinstalado en cualquier organismo del servicio público una vez cesara su puesto de confianza, con independencia de la agencia en la que éste hubiese adquirido el estatus de empleado regular.

En cuanto a la determinación de que la AFFET discriminó por razones políticas en contra del peticionario, JASAP determinó que los siguientes hechos fueron probados:

> El apelante pertenece al Partido Nuevo Progresista, en el cual ha participado como funcionario de colegios en procesos electorales, según la evidencia documental admitida y según declarado por éste.

> El Sr. Eduardo J. Vergara Agostini, pertenece al Partido Popular Democrático, pues admitió haber

participado como funcionario de colegio del referido partido político.

El Sr. Eduardo Vergara Agostini admitió que ordenó la evaluación de los expedientes de personal de los empleados que durante la pasada administración se les hubiera concedido diferenciales salariales.

De conformidad con el expediente de personal del apelante, efectivo al 16 de mayo de 2001 la autoridad nominadora eliminó un diferencial salarial de doscientos cincuenta dólares $250.00 mensuales que le había extendido la pasada administración.

Aunque el Sr. Eduardo Vergara Agostini sostuvo que había ordenado la evaluación de la totalidad de los expedientes de personal de la agencia, éste fue desmentido por la Sra. Alicia Díaz Rivera, quien indicó que solamente se habían evaluado un total de cuarenta y dos (42) expedientes de empleados que tenían diferenciales salariales bajo la pasada administración.

El Sr. Eduardo Vergara Agostini, fue un testigo mendaz al sostener que había recibido alrededor de cuatrocientos (400) informes de las evaluaciones de los expedientes de personal que le habían sometido las personas designadas a realizar esa tarea.

Dicha aseveración fue sostenida por el Sr. Eduardo Vergara Agostini, a preguntas del abogado de la parte apelante, sobre el por ciento de informes que aproximadamente había recibido. Indicó el Sr. Eduardo Vergara Agostini que había recibido alrededor de un setenta por ciento (70%) de evaluaciones de alrededor de seiscientos (600) empleados que tiene la agencia, lo que representa alrededor de cuatrocientas (400) evaluaciones.

También incurrió en un testimonio falaz al declarar que algunas de las funciones del apelante fueron absorbidas por la Sra. Alicia Díaz Rivera, lo que fue negado por ésta.

Durante la vista administrativa quedó establecido que la agencia no estableció un sistema imparcial, objetivo, científico ni uniforme en el proceso de evaluación de los expedientes de personal.

Según el testimonio de Camacho Torres quedó establecido que la agencia solamente ha anulado los nombramientos del apelante y de la Sra. Iris López, Directora del Programa "Job Corps", y que ambos están afiliados al Partido Nuevo Progresista.

En vista de las determinaciones de hechos antes transcritas, JASAP expresó que el motivo para investigar los expedientes de personal estuvo predicado en un acto discriminatorio dirigido a cuestionar el diferencial salarial concedido. Abona a lo anterior, el hecho de que la agencia no estableció un método científico ni lógico para realizar las auditorías a los expedientes de personal. Por lo que, según JASAP, la investigación y eventual anulación del nombramiento del recurrido fue un pretexto utilizado por la AAFET para discriminar en su contra por razones políticas.

Inconforme, la AAFET acudió ante el entonces Tribunal de Circuito de Apelaciones alegando que erró JASAP al resolver: (1) que al apelante le asistía un derecho a reinstalación en el puesto de subdirector de recursos humanos en virtud de lo dispuesto en la Sección 5.10 de la Ley de Personal del Servicio Público, 3 L.P.R.A. 1350; (2) que la parte apelada discriminó políticamente contra el apelante; y (3) que el testimonio del administrador de AAFET fue mendaz.

El foro apelativo intermedio revocó el dictamen administrativo por entender que el nombramiento del señor Camacho Torres a un puesto de carrera en la AAFET fue un acto nulo, por éste no tener derecho a la reinstalación. Además, el foro apelativo expresó que independientemente de las motivaciones del Administrador de la AAFET, no se puede inferir que la razón aducida por la agencia para anular su nombramiento de carrera constituía un pretexto para discriminar en su contra por razones políticas.

De la determinación del foro apelativo acudió ante nosotros el señor Camacho Torres señalando la comisión de los siguientes dos errores:

> Erró el Tribunal de Circuito de Apelaciones al revocar la decisión de la JASAP en el sentido de que al peticionario le asiste el derecho absoluto a reinstalación en el servicio de carrera, consagrado en la Ley de Personal en el servicio público y en el Reglamento de Personal de la agencia, luego de ser removido del servicio de confianza.

> Erró el Tribunal de Circuito de Apelaciones al revocar la determinación de la JASAP en el sentido de que se discriminó por razones políticas contra el peticionario.

El 19 de diciembre de 2003 expedimos el auto solicitado y, contando con la comparecencia de las partes, resolvemos.[2]

II

La antigua Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, ("Ley Núm. 5") vigente al momento de los hechos, fue concebida por el legislador como una legislación de avanzada cuyo propósito principal fue establecer el principio de mérito como aquél que gobernará todo lo relativo al personal del servicio público.[3] En consecuencia, solo se escogerían los empleados más aptos para servir al Gobierno en consideración al mérito y a la capacidad de éstos, sin discriminar por razones de

---

[2] En su escrito de *certiorari*, el peticionario nos informó que presentó una acción en daños ante el Tribunal de Primera Instancia por los hechos aquí alegado --Caso Núm. K DP-2002-1125-- y que el mismo se encuentra suspendido por orden de dicho tribunal hasta tanto advenga final y firme el dictamen objeto de este recurso.

[3] La Ley Núm. 5, *supra*, fue recientemente derogada por la Ley Núm. 184 de 3 de agosto de 2004, conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público. Dicha ley mantiene como política pública que el mérito será el principio que regirá el servicio público.

raza, color, sexo, nacimiento, edad, origen o condición social ni ideas políticas o religiosas. Ley Núm. 5, sec. 2.1.

Para la consecución de dicho fin, la ley estableció que todos los empleados públicos, sean éstos empleados estatales o municipales a **excepción de los empleados excluidos por la propia ley**, estarían cubiertos por un solo sistema de personal, establecido para hacer cumplir el principio de mérito. Según la visión del legislador, una vez unificado el personal del servicio público bajo una sola administración se fortalecería el principio de mérito, y todo empleado del sector público puertorriqueño sería seleccionado, adiestrado, ascendido y retenido en su empleo en consideración únicamente a sus capacidades y mérito. *Id.*

La Ley de Personal creó, pues, un Sistema de Administración de Personal integrado por la Administración Central y los Administradores Individuales. Asimismo, este sistema de personal constaría de dos servicios: el servicio de carrera y el servicio de confianza. Consistente con ello, se establecieron dos categorías de empleados: empleados de carrera y empleados de confianza. Ley Núm. 5, sec. 5.9.

Según la Ley Núm. 5, todos los empleados de carrera que componen el Sistema de Administración de Personal tendrán el derecho absoluto de reinstalación. Este derecho se refiere a que los empleados que ingresaron legítimamente al servicio de carrera y son nombrados a un puesto de confianza, una vez culmine en el servicio de confianza tendrá el derecho a ser reinstalado en un puesto igual o similar al último que ocupó en el puesto de carrera, salvo que su remoción del puesto de

confianza se haya efectuado mediante formulación de cargos. Ley Núm. 5, sec. 5.10.

Conforme dispone la propia ley, los empleados de carrera serían aquellos que han ingresado al sistema después de pasar por el procedimiento de selección y reclutamiento que dispone la propia ley en la sec. 4.3. Este tipo de empleado, una vez reclutado como empleado de carrera, goza de seguridad en el empleo y sólo puede ser destituido por justa causa y previo a ciertos trámites de rigor. Ley Núm. 5, sec. 4.6. Véase, *Giovanetti v. E.L.A.*, res. 29 de marzo de 2004; 161 D.P.R. ___ (2004), 2004 TSPR 46, 2004 J.T.S. 55; *López Rosas v. Comisión Estatal de Elecciones*, res. 30 de marzo de 2004, 161 D.P.R. ___ (2004), 2004 TSPR 47, 2004 J.T.S. 56.

Mientras, los empleados de confianza serían aquellos que "intervienen o colaboran sustancialmente en la formulación de la política pública, que asesoran directamente o prestan servicios directos al jefe de la agencia." Ley Núm. 5, sec. 5.10. Los empleados de confianza serán de libre selección y remoción. He allí la mayor diferencia entre estas dos categorías de empleados, los empleados de carrera que han pasado por el proceso de reclutamiento y selección conforme al principio de mérito tienen un derecho de propiedad sobre su puesto por lo que no podrán ser removido del mismo sin justa causa y sin el debido proceso de ley. Sin embargo, los empleados de confianza no están cobijados por el principio del mérito, por lo que no tienen derecho de retención y pueden ser removidos en cualquier momento, salvo que su nombramiento sea por un término fijado por ley. *Id*. En

virtud de tal diferencia, la Ley Núm. 5, reconoció el referido derecho de reinstalación.

No obstante, los derechos y disposiciones que la Ley Núm. 5 promulga son aplicables, como mencionáramos, a los empleados de las agencias y municipios que integran dicho Sistema de Administración de Personal. Sin embargo, por imperativo de la propia ley, no aplicarán a una serie de agencias y ramas de gobierno, que se calificaron como "agencias excluidas". Estas agencias comprenden, entre otras: (1) la Rama Legislativa; (2) la Rama Judicial; (3) los empleados de agencias o instrumentalidades del Gobierno que funcionan como negocios privados; y, (4) los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales. Ley Núm. 5, sec. 10.6.

Por lo tanto, de lo anterior surge meridianamente claro que el derecho a reinstalación establecido en la Sec. 5.10 de la Ley de Personal es aplicable únicamente a los empleados y funcionarios de las agencias incluidas o que son parte del Sistema de Administración de Personal (Central o Individual) creado por dicha ley. En consecuencia, cuando un empleado pase de una agencia excluida de la Ley de Personal, a una agencia incluida en el sistema de administración de personal creado por dicha ley, no tendrá el derecho a conservar el estatus de empleado de carrera previamente adquirido en la agencia excluida de la cual provenga.

Ahora bien, lo anterior no es óbice para que las agencias excluidas reconozcan el derecho de reinstalación a

sus empleados a través de la aprobación de sus propios reglamentos. Ello es así ya que nada impide que las agencias excluidas adopten mediante reglamento los derechos contenidos en la Ley de Personal, como por ejemplo el derecho a reinstalación. *Piñeiro v. AAA*, *supra*, pág. 907. En consecuencia, el reglamento que las agencias excluidas adopten a los fines de reconocer los derechos y disposiciones cubiertas por la ley de personal será la disposición legal que aplicará a sus empleados, no así la Ley Núm. 5.

Dichas agencias, al formular sus respectivos reglamentos de personal estarán en cumplimiento con la propia Ley Núm. 5 que dispuso que las agencias excluidas que funcionan como negocios privados o que reconozcan a sus empleados el derecho a negociar colectivamente deberán adoptar un reglamento de personal incorporando el principio del mérito, el cual regirá las normas de personal de aquellos empleados no cubiertos por convenios colectivos. Véase, *Rodríguez v. Bco. Gub. de Fom. P.R.*, 151 D.P.R. 383 (2000). Los reglamentos de personal que estas agencias aprueben incorporando el principio de mérito serán, por norma general, de aplicación para sus propios empleados. De modo que, la anterior obligación de adoptar el principio de mérito y por consiguiente el derecho de reinstalación, no implica, necesariamente, que las agencias excluidas tengan la obligación de hacerlo extensivo a los empleados de carrera que provienen de otra agencia gubernamental.

En *Aut. de Puertos v. Mun. de San Juan*, 123 D.P.R. 496 (1989), resolvimos, entre otras cosas, que no existe el

concepto de "traslado" de personal entre agencias excluidas de la aplicación de la Ley Núm. 5 y agencias de la Administración Central o que sean Administradores Individuales. *Id.*, a la pág. 508. Siendo así, cuando un empleado de una corporación pública interesa pasar a un puesto —sea de carrera o de confianza— en una agencia regular del Gobierno, es necesario que el empleado renuncie a uno para ocupar el otro, independientemente de que no haya interrupción de trabajo en esa acción.

Como resultado, un empleado de carrera de una agencia excluida que pasa a ocupar un puesto de confianza en una agencia del gobierno central, no tiene derecho —cuando se separe del puesto de confianza— a ser reinstalado en un puesto de carrera ni en la corporación pública de donde provino ni en la agencia en que hubiere ocupado el puesto de confianza. No tiene derecho de reinstalación en la corporación pública porque renunció allí a su puesto de carrera y no tiene derecho a ser reinstalada en la agencia del gobierno a la que pasó a laborar porque nunca ocupó allí un puesto de carrera.

### III

En el caso de autos, el peticionario sostiene que le asiste su derecho a reinstalación al puesto de subdirector de recursos humanos de la AAFET en virtud de que antes de ocupar un puesto de confianza en la referida agencia, ocupó un puesto en el servicio de carrera en la Corporación de Crédito y Desarrollo Comercial y Agrícola. No tiene razón.

La antigua Corporación de Crédito y Desarrollo Comercial y Agrícola de Puerto Rico, era una corporación pública que funcionaba como una empresa privada. Ley Núm. 1 de 21 de agosto de 1990.[4] En su artículo 5 se estableció lo siguiente:

> La Corporación podrá nombrar, emplear y contratar los servicios de todos sus funcionarios, agentes y empleados y conferirles los poderes, facultades, responsabilidades y la autoridad que estime propia, imponer sus deberes, fijarles, cambiarles y pagarles la remuneración que determine, sujeto al reglamento y a procedimientos aprobados por la Junta de Directores de la Corporación. **La disposición de todos los asuntos de personal de la Corporación se efectuará sin sujeción a la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como "Ley de Personal del Servicio Público de Puerto Rico.** (Énfasis suplido).

Asimismo, el Reglamento de Personal de la Corporación de Crédito y Desarrollo Comercial y Agrícola de Puerto Rico, Reglamento Núm. 4481 de 28 de junio de 1991, dispuso en su preámbulo que la Corporación queda excluida de la aplicación de la Ley Núm. 5 de 14 de octubre de 1975, Ley del Personal del Servicio Público, conforme a los dispuesto en la sección 10.6 inciso (4)." No obstante, "la Corporación conforme al mandato de ley integró el principio de mérito a las normas de personal aplicables a sus empleados no cubiertos por convenios colectivos." Véase, Preámbulo del Reglamento de Personal Núm. 4481. Además, en el Reglamento, Sec. 6.3, la Corporación reconoció a sus empleados el derecho de reinstalación en los siguientes términos:

---

[4] La Ley Núm. 1 de 21 de agosto de 1990 fue derogada y sustituida por la Ley Núm. 323 de 28 de diciembre de 2003, 7 L.P.R.A. 1227, en la actualidad dicha corporación se conoce como la Compañía de Comercio y Exportación de Puerto Rico.

> Si un empleado en el Servicio de Carrera con status
> regular pasa al Servicio de Confianza y
> posteriormente se separa del mismo **en la
> corporación**, tendrá derecho absoluto a ser
> reinstalado con categoría de empleado de carrera,
> en un puesto igual o similar al que ocupaba en el
> Servicio de Carrera al momento en que pasó al
> Servicio de Confianza. (Énfasis nuestro.)

De su mera lectura es evidente que la Corporación reconoció el derecho de sus empleados de carrera a la reinstalación en un puesto igual o similar al que ocupaban antes de pasar a ocupar el puesto de confianza **en la misma corporación**, una vez cesaran en el puesto de confianza. Por eso es que, a tenor con la sec. 6.3 del Reglamento de Personal de la Corporación, si el señor Camacho Torres hubiese estado ocupando un puesto de carrera en la Corporación y hubiese pasado al puesto de confianza **dentro de la misma Corporación**, habría tenido un derecho absoluto —al cesar en el puesto de confianza— de ser reinstalado en un puesto igual o similar al que allí ocupó en el servicio de carrera.

Sin embargo, en el caso de autos el señor Camacho Torres **renunció a su puesto de carrera** en la Corporación para ocupar un puesto de confianza en la Administración para el Adiestramiento de Futuros Empresarios y Trabajadores y esta última sí se encuentra sujeta a las disposiciones de la Ley de Personal, por disposición expresa de su Ley Orgánica, Ley Núm. 1 del 23 de junio de 1985.

No existe ninguna disposición estatutaria o reglamentaria que le conceda al señor Camacho Torres el derecho de reinstalación. Conforme la Ley Núm. 5, sec. 5.10,

como indicamos, el empleado que tiene derecho a ser reinstalado es aquél que antes de haber ocupado un puesto de confianza, había sido legítimamente nombrado a un puesto de carrera **en una de las agencias comprendidas dentro de la Administración Central o de algunos de los Administradores Individuales del Sistema de Administración creado por la Ley de Personal, no así en una corporación pública.** No siendo este el caso aquí, una vez el peticionario culminó su servicio de confianza en la AAFET no tenía derecho a ser reinstalado en dicha agencia, por no haber ocupado con anterioridad un puesto de carrera en alguna de las agencias incluidas en la Ley de Personal. Por lo tanto, su nombramiento como subdirector de recursos humanos de AAFET, puesto que está integrado en el servicio de carrera, fue nulo.

El peticionario invoca a su favor lo resuelto por este Tribunal en *Piñero v. A.A.A.*, *supra*. No tiene razón, *Piñero* no tiene el alcance pretendido. En *Piñero v. A.A.A.,* una empleada de carrera del Municipio de San Juan que pasó a un puesto de confianza en la Autoridad de Acueductos y Alcantarillados, del que fue separada después, exigió ser reinstalada en un puesto de carrera en la Autoridad a tenor con la Resolución 966 de su Junta de Gobierno que disponía:

> [L]os empleados que fueron reclutados que habiendo ocupado puestos de Carrera en las Agencias, Municipios, o Corporaciones Públicas y que posteriormente han pasado o pasen en el futuro a ocupar puestos de confianza en la Autoridad sin haber tenido interrupción en servicio público al efectuarse dicho cambio, **tendrán derecho a ser reinstalados con status de empleados regulares de carrera en la Autoridad en puestos de igual nivel o**

**similar al puesto que fue reclutado,** entendiéndose que no será ubicado en un puesto superior al último que ocupó de confianza en la Autoridad para cuya retribución se consignará siguiendo el procedimiento de retribución vigente a la fecha de reinstalación. (Énfasis nuestro.)

La Autoridad de Acueductos y Alcantarillados cuestionó la validez de esta disposición, y señaló que la empleada no tenía derecho a la reinstalación. Planteada así la controversia, resolvimos que la Resolución de la Junta de Gobierno en cuestión era jurídicamente válida y confirió el derecho de reinstalación a aquellas personas que entraron al servicio público conforme al principio del mérito, ocuparon puestos de carrera y, posteriormente, desempeñaron puestos de confianza en la A.A.A. No reconocimos el principio de movilidad de empleados de carrera entre agencias excluidas de la Ley de Personal como fundamento para un derecho absoluto de reinstalación de la empleada demandante en *Piñero*. **Mas bien, reconocimos la potestad de las agencias excluidas de hacer extensivo a sus empleados mediante reglamentación los beneficios que se han reconocido en la Ley de Personal.**

Por lo tanto, y contrario a lo que propone el señor Camacho Torres en su recurso, lo resuelto en *Piñero* no extiende el derecho de reinstalación a los empleados de confianza que provengan de un puesto de carrera en agencias que no son parte del Sistema de Personal, es decir, agencias excluidas por la Ley de Personal como lo son las corporaciones públicas.

Resolvemos por lo tanto, que actuó correctamente el Tribunal de Apelaciones al revocar la determinación en contrario de JASAP.

IV

A

En el presente caso, el peticionario alegó además, que fue objeto de discrimen político al escogerse selectivamente su expediente de personal para revisión y, que el argumento de que su reinstalación a un puesto de carrera en AAFET era nula por lo que se justificaba su destitución, fue un mero pretexto que enmascara una acción discriminatoria en su contra.

La Sección 1 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que no podrá establecerse discrimen alguno por motivo de raza, color, ideas políticas o religiosas. De allí que los constituyentes expresaran al respecto que "se reconoce el derecho a tener ideas políticas y convicciones religiosas diferentes y en conflicto entre sí sin que esta diferencia o este conflicto militen en favor o en contra de ciudadano alguno en sus relaciones con el Estado. La libertad de pensamiento y la libertad de conciencia quedan aquí protegidas no sólo en su expresión sino también en las consecuencias de esta expresión." (Énfasis suplido). 4 *Diario de Sesiones de la Convención Constituyente*, 2561-2562 (1951). La Constitución reconoce por lo tanto, como secuela de la libertad de pensamiento y de expresión, el derecho a no ser discriminado por las ideas políticas que se profesan.

De forma consistente con ello, este Tribunal en más de una ocasión ha resuelto que los empleados públicos gozan de protección en sus cargos contra el discrimen por ideas políticas. *López Colón v. Miranda Marín*, res. 16 de diciembre de 2005, 166 D.P.R. ___ (2005), 2005 TSPR 197; *Alberty v. Bco. Gubernamental de Fomento*, 149 D.P.R. 655 (1999); *McCrillis v. Aut. de Navieras de P.R.*, 123 D.P.R. 113 (1989); *Ramos v. Srio. de Comercio*, 112 D.P.R. 514 (1982).

Esta protección se extiende a los empleados de confianza a pesar de que éstos no poseen una expectativa de permanencia en sus puestos, pues los mismos están sujetos a la libre selección y remoción por sus superiores. *Alberty v. Bo. Gub. de Fomento*, 149 D.P.R. 655 (1999); *McCrillis v. Aut. de Navieras de P.R., supra*; *Ramos v. Srio. de Comerio, supra*. Asimismo, hemos resuelto que los empleados públicos transitorios están protegidos contra el discrimen político a pesar de no tener expectativa alguna de continuidad en el empleo. *Aponte Burgos v. Aponte Silva, supra*.

En casos de discrimen político hemos adoptado la doctrina establecida por el Tribunal Supremo de los Estados Unidos en la trilogía de casos *Elrod/Branti/Rutan*. *E.g., Elrod v. Branti*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party*, 497 U.S. 62 (1990). Véase, *Ramos v. Srio de Comercio, supra; McCrillis v. Aut. de Navieras de P.R., supra*. Así, en una reclamación de esa naturaleza el demandante debe demostrar que su afiliación política, --es decir, la conducta constitucionalmente protegida-- fue un factor sustancial o

criterio decisivo para la acción adversa de personal que impugna. *McCrillis, supra*. Hecha tal demostración, el demandante ha establecido un caso *prima facie* de discrimen. Véase, *Alberty Marrero, supra*, pág. 665; *López Colón v. Miranda Marín*, res. 16 de diciembre de 2005, 166 D.P.R. ___ (2005), 2005 TSPR 197.

Una vez ello ocurra, se transfiere el peso de la prueba al demandado para que demuestre, por preponderancia de la evidencia, que éste hubiese tomado la misma determinación aún en ausencia de la conducta constitucionalmente protegida. Esta defensa se conoce como la "defensa *Mt. Healthy*", en atención que la misma fue articulada originalmente en el caso *Mt. Healthy City Bd. of Ed. v Doyle*, 429 U.S. 274, 286-287 (1977). Véase además, *Givhan v. Western Line*, 439 U.S. 410 (1979).

Esta defensa recoge el elemento de causalidad para este tipo de acción. Pues, como se señaló en *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998): "At least with certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation --there must also be evidence of causation. **Accordingly, when a public employee shows that the protected [conduct] was a 'motivating factor' in the adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct.**" (Énfasis nuestro.) *Texas v. Lesage*, 528 U.S. 18, 21 (1999) ("Where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it

is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under 42 U.S.C.S. § 1983.")   Véase además, *Sánchez López v. Fuentes Pujols*, 375 F.3d 121, 131 (1st Cir. 2004).[5]

Articulado un motivo no discriminatorio por el patrono, la presunción queda destruida. *Ibáñez Benítez v. Molinos de P.R. Inc*., 114 D.P.R. 42 (1983).   En ese caso, el empleado puede entonces presentar prueba, sin el beneficio de la presunción, de que la razón esbozada por el patrono es un mero pretexto y si no fuera por su afiliación política no se hubiese promovido acción alguna. *McCrillis, supra,* pág. 142; *Segarra Feliciano v. Mun. de Peñuelas*, 145 D.P.R. 770 (1998).

Así por ejemplo, si la razón no discriminatoria articulada por el patrono como justificación para su acción, aun cuando válida, no es una que se haya aplicado a todos los que estén en la misma posición del empleado agraviado, sino solamente a aquellos que militan en el mismo partido del reclamante, habría base para que el juzgador concluyese que la justificación invocada fue un mero pretexto y que verdaderamente privó en el ánimo del patrono una intención discriminatoria. *E.g., Acevedo García v. Vera Monroig*, 204 F.3d 1, 10-11 (1st Cir. 2000)(aplicación discriminatoria de

---

[5] La razón de ser del elemento de causalidad ha sido descrita de la siguiente manera:   "[The Mt. Healthy defense] ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action." *Sánchez López v. Fuentes Pujols*, 375 F.3d 121, 131 (1st Cir. 2004); *Mt Healthy, supra*, pág. 286; *Padilla- García v. Municipio de Mayagüez*, 212 F.3d 69 (1st Cir. 2000).

un plan de cesantía válidamente establecido por el municipio). Por el contrario, *Kauffman v. P.R. Tel. Co.,* 841 F.2d 1169, 1172, 1173 (1st Cir. 1988)(ante la ausencia de evidencia de que la acción de personal se aplicó exclusivamente a empleados que profesaran la misma ideología política del demandante, procede la desestimación de la reclamación de discrimen político.)  En tal sentido, en *Sánchez López v. Fuentes Pujols*, *supra*, pág. 133, se indicó: "simple showing that an appointment was illegal under local law does not suffice to meet defendants' *Mt. Healthy* burden." Hecha tal demostración a satisfacción del juzgador procedería concluir que el empleado fue objeto de discrimen.

B

Por otro lado, reiteradamente hemos dispuesto que las decisiones de los organismos administrativos gozan de la mayor deferencia por los tribunales y la revisión judicial ha de limitarse a determinar si la agencia actuó arbitraria o ilegalmente o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rivera Concepción v. ARPE*, 152 D.P.R. 116 (2000); *Facultad para las Ciencias Sociales v. C.E.S.*, 133 D.P.R. 521 (1993).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección que debe ser respetada a menos que quien las impugne produzca suficiente evidencia para derrotar dicha presunción. *Otero Mercado v. Toyota de Puerto Rico,* res. 3 de febrero de 2005, 163 D.P.R. ___, 2005 TSPR 8; *A.R.P.E v. Junta de Apelaciones*, 124 D.P.R. 858, 864 (1989).

*Henríquez v. C.E.S.*, 120 D.P.R. 194, 210 (1987). Es decir, quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Pro-Mej., Inc. v. Jta. De Planificación,* 147 D.P.R. 750, 761 (1999).

Para ello hay que "demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración." *Otero Mercado, supra*. En ausencia de tal prueba, las determinaciones de hecho de la agencia deben ser sostenidas. *Domínguez v. Caguas Expressway Motors*, 148 D.P.R. 387, 398 (999).

**Cuando las determinaciones de hecho impugnadas se basen en la prueba testifical desfilada en el proceso administrativo y la credibilidad que la misma le mereció al juzgador, es imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba. En ausencia de tal prueba difícilmente se podrá descartar la determinación impugnada.**

Establecido el marco doctrinal aplicable, procede evaluar el reclamo del peticionario de que fue objeto de discrimen político.

V

La AAFET en su recurso de apelación ante el Tribunal de Apelaciones planteó que JASAP erró al determinar en sus conclusiones de derecho, que la agencia discriminó en contra de Camacho Torres. Específicamente, cuestionó la validez de varias de las determinaciones de hecho de la resolución de JASAP que sustentaban la conclusión de derecho y solicitó la revocación del dictamen de JASAP.

**A pesar de que cuestionaba las determinaciones de hecho del foro administrativo, la AAFAT, sorprendentemente, no procuró presentar ante el tribunal apelativo intermedio una exposición narrativa de la prueba o una transcripción de la prueba oral.** A base de ello, Camacho Torres nos planteó en su recurso que procedía la revocación de la determinación del foro apelativo intermedio toda vez que la omisión de AAFET impidió que el tribunal apelativo pudiese aquilatar el planteamiento de ésta. **Le asiste la razón. La AAFET no colocó al Tribunal de Apelaciones en posición de revocar las determinaciones de hechos de JASAP.**

En el caso ante nuestra consideración, JASAP concluyó que AAFET no había establecido un "sistema imparcial, objetivo, científico ni uniforme en el proceso de evaluación de los expedientes de personal." JASAP concluyó también, que solamente se escogieron para revisión los expedientes de aquellos empleados afiliados al Partido Nuevo Progresista y que los únicos dos empleados destituidos eran personas afiliadas a dicho partido.

No hay en el expediente ante nuestra consideración, como ya se señaló, copia del testimonio vertido en el proceso administrativo para aquilatar el testimonio vertido. Tampoco hay prueba documental sobre las auditorias efectuadas, o sobre cualquier otro asunto que incidiera sobre la controversia ante nuestra consideración. No sabemos a ciencia cierta cuántos expedientes en efecto se revisaron. En las determinaciones de hecho se señaló que el Administrador testificó que él ordenó una revisión de todos los expedientes de personal. No hay documentación que así lo corrobore. Por lo tanto, el asunto de si ordenó la revisión de todos los expedientes era un asunto de credibilidad, en última instancia. El foro administrativo específicamente concluyó que este testimonio no le mereció credibilidad, a la luz de lo que señaló otra funcionaria de la agencia que testificó. **Al no acompañarse a la solicitud de revisión una transcripción de la vista o en su defecto, una exposición narrativa de la prueba, AAFET impidió que se pudiera revisar esta determinación. No hay por lo tanto base en el récord para descartar la misma como concluyó el foro apelativo.**

Hemos establecido que los tribunales apelativos no deben intervenir con las determinaciones de hecho del foro recurrido cuando no tenemos forma de evaluar la evidencia presentada debido a que la parte concerniente no elevó una exposición narrativa de la prueba. *Benítez Guzmán v. García Merced*, 126 D.P.R. 302, 308 (1990). En estos casos, se impone un respeto al aquilatamiento de credibilidad del foro recurrido en consideración a que "sólo tenemos . . . .

récords mudos e inexpresivos. Esas apreciaciones deben ser objeto de gran deferencia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto que nos mueva a intervenir." *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984). Véase, también, *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985).

El Tribunal de Apelaciones, aun cuando reconoce que no se presentó la prueba oral entiende que de la totalidad del expediente no se puede concluir que la decisión de la agencia fue discriminatoria. Principalmente, basó su conclusión en su aseveración de que, independientemente de la motivación que tuviera el Administrador para revisar el expediente de Camacho Torres, todo director de una agencia "tiene plena facultad para revisar si un empleado determinado cumple con las condiciones que establece la ley para que pueda recibir un diferencial salarial; y plena facultad para periódicamente revisar si las condiciones que ameritaron la concesión de tal diferencial aun existen." Por lo que se justificaba la actuación del Administrador de AAFET de revisar el expediente y, advertido de la ilegalidad de la reinstalación de Camacho Torres, ordenar su despido.

No hay duda que todo director o jefe de una agencia de gobierno tiene la obligación de cerciorarse que las transacciones de personal en su agencia se efectúan, y se hayan efectuado, conforme las normas estatutarias y reglamentarias aplicables. No se pueden tolerar desviaciones a la reglamentación de personal para beneficiar a algunos

pocos. Así, si hay base para creer que se ha incumplido con la reglamentación de personal vigente nada impide que se conduzca la correspondiente auditoría y se tomen las medidas correctivas necesarias. Ahora bien, lo que no se puede hacer es singularizar a un grupo en particular para revisión y eventual sanción, **si el criterio para ello es únicamente la afiliación política del empleado**, habida cuenta que el criterio utilizado incide sobre una conducta constitucionalmente protegida.

Nos resta determinar si a la luz de las determinaciones de hechos de JASAP se justificaba su conclusión de derecho en el sentido que Camacho Torres fue objeto de discrimen político.

A base de estas determinaciones de hecho, y en atención al derecho aplicable a las reclamaciones de discrimen político, no es irrazonable concluir que la defensa de que se destituyó del puesto a Camacho Torres porque su nombramiento había sido ilegal, puede ser considerada como un pretexto tal y como concluyó JASAP. No existiendo en el récord base para revisar esta determinación, erró el foro apelativo intermedio al revocar a JASAP en cuanto a este particular.

Al finalizar debemos hacer constar, que confirmar la determinación de JASAP sobre discrimen político, no supone la restitución de Camacho Torres a su puesto de carrera en AAFET.[6] Como ya concluimos, éste ocupaba dicho puesto de

---

[6] Ello no implica que Camacho Torres esté carente de remedio alguno. Lo único que el remedio, procedería ante el foro judicial y no ante JASAP. Véase, nota al calce 2, supra.

forma ilegal al no tener derecho a la reinstalación. No podemos refrendar la teoría de que la acción ilegal de la agencia al reinstalar a Camacho Torres en un puesto de carrera cuando no tenía derecho a ello, pueda ser fuente para reconocer derechos allí donde no los hay. *Colón v. Alcalde Mun. de Ceiba*, 112 D.P.R. 740 (1982); *Delgado Rivera v. Alcalde de Carolina*, 109 D.P.R. 5, 11 (1979). Después de todo, los actos ultravires de los funcionarios públicos no generan derechos, no obligan al organismo administrativo, ni le impiden a éste efectuar una corrección. *Franco v. Municipio de Ceiba*, 113 D.P.R. 260, 262 (1982); *Del Rey v. JACL*, 107 DPR 348, 355 (1978). Véase, además, *González Fuentes v. ELA*, res. 29 de marzo de 2006, 167 D.P.R. ___ (2006), 2006 TSPR 44.

VI

Por los fundamentos antes expresados, se dicta sentencia y se modifica la sentencia dictada por el Tribunal de Apelaciones para revocar aquella parte de la misma en la que se dispuso que había errado JASAP al concluir que el peticionario había sido discriminado políticamente. Se confirma, por lo tanto, la determinación del foro apelativo de que el peticionario no tenía derecho a reinstalación en un puesto de carrera en AAFET y que su nombramiento al mismo fue nulo.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José G. Camacho Torres

    Peticionario

       v.

Administración para el           CC-2003-868
Adiestramiento de Futuros
Empresarios y Trabajadores

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 22 de mayo de 2006

      Por los fundamentos expresados en la Opinión que antecede los cuales se incorporan íntegramente a la presente, dictamos sentencia y modificamos la sentencia dictada por el Tribunal de Apelaciones para revocar aquella parte de la misma en la que se dispuso que había errado JASAP al concluir que el peticionario había sido discriminado políticamente. Se confirma, por lo tanto, la determinación del foro apelativo de que el peticionario no tenía derecho a reinstalación en un puesto de carrera en AAFET y que su nombramiento al mismo fue nulo.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Fuster Berlingeri y señor Rivera Pérez no intervinieron.

                Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo